(Slip Opinion)

# Who Qualifies as a "Very Senior" Employee Under 18 U.S.C. § 207(d)(1)(B)

Section 207(d)(1)(B) of title 18 encompasses any Executive Branch employee who receives a rate of basic pay of exactly the amount payable for level I of the Executive Schedule, regardless of whether the employee's pay is required to be set at level I by law or is set at level I by administrative action.

An employee's "rate of pay" in section 207(d)(1)(B) refers to the employee's rate of basic pay, exclusive of any other forms of compensation such as bonuses, awards, allowances, or locality-based comparability payments.

January 19, 2017

MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL
DEPARTMENT OF HEALTH AND HUMAN SERVICES

Section 207(d) of title 18 imposes stringent post-employment restrictions on "very senior" employees in the Executive Branch. The provision applies to, among others, "any person who . . . is employed in a position in the executive branch of the United States (including any independent agency) at a rate of pay payable for level I of the Executive Schedule." 18 U.S.C. § 207(d)(1)(B). Your office has asked two questions about the meaning of the phrase "employed in a position . . . at a rate of pay payable for level I": first, whether that phrase encompasses only those employees who are paid pursuant to a statute setting pay for the position exactly at level I, or whether it extends to employees who may be paid within a range and whose pay has been administratively set at exactly the amount payable for level I; and, second, whether "rate of pay" refers only to the employee's basic rate of pay, or whether it includes additional pay (such as bonuses, awards, or allowances) that the employee may receive. Letter for Karl R. Thompson, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from William B. Schultz, General Counsel, Dep't of Health and Human Services at 3 (May 5, 2016) ("HHS Opinion Request"); *see also* Letter for Karl R. Thompson, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from David J. Apol, General Counsel, Office of Government Ethics at 3 (Aug. 5, 2016) ("OGE Views") (clarifying HHS's first question).[1]

---

[1] In preparing this opinion, we received the views of the Office of Government Ethics ("OGE"), the Department of Veterans Affairs ("VA"), and the Treasury Department. *See*

We have already addressed your first question, albeit in dictum, in an opinion about the application of section 207(d)(1)(B) to certain Treasury Department employees. *See Applicability of 18 U.S.C. § 207(d) to Certain Employees in the Treasury Department*, 24 Op. O.L.C. 284 (2000) ("*Treasury Employees*"). There, we concluded that employees compensated at a "rate of pay" *exceeding* level I of the Executive Schedule are not subject to section 207(d)'s post-employment bar. In reaching that conclusion, we stated that section 207(d)(1)(B) does not apply exclusively to officials listed in 5 U.S.C. § 5312, which sets the pay for Cabinet members and other high-level officials at level I, but instead sweeps in "any executive branch employee who is paid the same level I rate of pay that the officials listed in [section 5312] receive." *Treasury Employees*, 24 Op. O.L.C. at 287 n.2. The opinion further observed that "[i]f the salary of the Treasury employees in question had been set *exactly* at the rate for level I, subsection (d) by its terms would seem to apply." *Id.* at 287. Our *Treasury Employees* opinion therefore appeared to reject the possibility that section 207(d)(1)(B) applies only to employees in positions for which the pay is fixed at level I by statute.

Because your office's opinion request implicitly suggests that we revisit this question, and because other interested agencies have expressed their view that section 207(d)(1)(B) should be read to apply only to employees occupying positions for which the pay is legally required to be set at level I, *see* OGE Views at 3; VA Views at 1; Treasury E-mail, we have considered anew the scope of section 207(d)(1)(B). We once again conclude, however, that the provision encompasses all Executive Branch employees who receive a "rate of pay" equal to the amount payable for level I, whether their pay is required by law to be set at level I or is set at level I by administrative action.

With respect to your second question, we conclude that an employee's "rate of pay" in section 207(d)(1)(B) refers to the employee's rate of basic pay, exclusive of any other forms of compensation such as bonuses, awards, allowances, or locality-based comparability payments.

---

OGE Views; Letter for Karl R. Thompson, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from Leigh Bradley, General Counsel, Dep't of Veterans Affairs (Aug. 10, 2016) ("VA Views"); E-mail for Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, from Rochelle F. Granat, Assistant General Counsel, Dep't of the Treasury, *Re: FW: Formal opinion request re application of 18 USC 207(d)* (July 28, 2016 7:03 PM) ("Treasury E-mail").

## I.

## A.

Section 207(d) of title 18 restricts the conduct of "very senior" Executive Branch employees once they have left their positions, and provides that violations of these restrictions may give rise to criminal and civil penalties. *See* 18 U.S.C. §§ 207(d), 216. The first half of the subsection defines the types of employees to whom section 207(d) applies and states the applicable prohibitions:

> (1) RESTRICTIONS.—In addition to the restrictions set forth in subsections (a) and (b) [of section 207], any person who—
>
> (A) serves in the position of Vice President of the United States,
>
> (B) is employed in a position in the executive branch of the United States (including any independent agency) at a rate of pay payable for level I of the Executive Schedule or employed in a position in the Executive Office of the President at a rate of pay payable for level II of the Executive Schedule, or
>
> (C) is appointed by the President to a position under section 105(a)(2)(A) of title 3 or by the Vice President to a position under section 106(a)(1)(A) of title 3,
>
> and who, within 2 years after the termination of that person's service in that position, knowingly makes, with the intent to influence, any communication to or appearance before any person described in paragraph (2), on behalf of any other person (except the United States), in connection with any matter on which such person seeks official action by any officer or employee of the executive branch of the United States, shall be punished as provided in section 216 of this title.

*Id*. § 207(d)(1). Subsection (d)(2), in turn, specifies the individuals with whom "very senior" employees may not communicate after leaving their positions:

> (2) PERSONS WHO MAY NOT BE CONTACTED.—The persons referred to in paragraph (1) with respect to appearances or communications by a person in a position described in subparagraph (A), (B), or (C) of paragraph (1) are—

(A) any officer or employee of any department or agency in which such person served in such position within a period of 1 year before such person's service or employment with the United States Government terminated, and

(B) any person appointed to a position in the executive branch which is listed in section 5312, 5313, 5314, 5315, or 5316 of title 5.

*Id*. § 207(d)(2). Thus, under section 207(d), a former official meeting the description of a "very senior" employee is barred from communicating with anyone who serves in his former agency, as well as with anyone serving in an Executive Schedule position in *another* federal agency, for two years after he has left the "very senior" position, if that communication is intended to influence official agency business and is not made on behalf of the United States.[2]

The prohibition in section 207(d) is broader than the so-called "cooling off" prohibition in another part of section 207, section 207(c), which applies to "senior" employees. Section 207(c) bars communications only with individuals in the senior employee's former agency and applies only for one year following the employee's departure. *See id*. § 207(c)(1). Moreover, section 207(c)(2)(C) allows the Director of OGE to waive the prohibition for some classes of senior employees if he makes particular findings, and section 207(h) allows him to narrow section 207(c)'s scope in another respect. *See id*. § 207(c)(2)(C), (h). Section 207(d), on the other hand, is not subject to waiver or narrowing.

## B.

In the *Treasury Employees* opinion, our Office addressed a question about the scope of section 207(d)(1)(B). 24 Op. O.L.C. at 284. The opinion concerned some categories of Treasury employees in the Internal Revenue Service ("IRS") and the Office of Thrift Supervision ("OTS"). These IRS and OTS positions were not listed in 5 U.S.C. § 5312,[3] and the

---

[2] Section 207(j) exempts communications made on behalf of certain other entities or for certain specified purposes. *See* 18 U.S.C. § 207(j).

[3] Section 5312 of title 5 lists Cabinet members along with the United States Trade Representative, the Director of the Office of Management and Budget, the Commissioner of Social Security, the Director of National Drug Control Policy, the Chairman of the Board of Governors of the Federal Reserve System, and the Director of National Intelligence.

statutes authorizing their salaries did not declare that they would be paid at level I of the Executive Schedule. Instead, Treasury had statutory authority to set those salaries within a specified range including and also exceeding level I (in the case of the IRS employees) or "without regard to the provisions of other laws applicable to officers or employees of the United States" (in the case of the OTS employees). *Treasury Employees*, 24 Op. O.L.C. at 285. As a result of this administrative discretion, all of the employees in question had salaries exceeding level I. Treasury asked whether the employees would therefore be subject to the more severe post-employment restrictions in section 207(d) instead of those in section 207(c). *Id*.

We determined that the Treasury employees in question were not "employed in a position in the executive branch of the United States . . . at a rate of pay payable for level I of the Executive Schedule." *Id*. at 286. The basis for our conclusion, however, was not that the salaries for the IRS and OTS positions were not set at level I by statute. *See id*. at 287 n.2. Instead, we reasoned that the phrase "employed in a position . . . *at a rate of pay payable for level I*" signified that section 207(d)(1)(B) "applies only to employees whose pay is the same as that of a level I official." *Id*. at 286. We contrasted that phrase with language in section 207(c) that, at the time of our opinion, covered employees whose basic rate of pay was "*equal to or greater than* the rate of basic pay payable for level 5 of the Senior Executive Service," 18 U.S.C. § 207(c)(2)(A)(ii) (Supp. IV 1998) (emphasis added), and we stated that "Congress presumably was aware that various statutes authorized pay above that for level I, yet chose the narrower and more targeted language of subsection (d)." *Treasury Employees*, 24 Op. O.L.C. at 286.

We acknowledged that our reading, which meant that officials receiving pay above level I would be subject to more lenient post-employment restrictions than lesser-paid officials receiving exactly the level I amount, "may appear to lead to anomalous consequences." *Id*. Section 207 seemingly uses a former official's salary as a proxy for ability to exercise influence, so that higher salaries generally result in more stringent post-employment restrictions. *Id*. But we concluded that the apparent anomaly could be resolved by reference to the statute's purpose. The officials listed in 5 U.S.C. § 5312 include Cabinet secretaries and other high-level officials; the IRS and OTS employees, by contrast, were not in leadership positions and therefore lacked the responsibility and stature of those

designated as level I officials by statute. *Treasury Employees*, 24 Op. O.L.C. at 286–87. Thus, we reasoned that, even though the IRS and OTS employees received a higher salary than officials paid at level I, the IRS and OTS officials would "have less ability to exercise post-employment influence than those listed in [section 5312], and their former positions [would] also be far less likely to create an appearance of undue influence." *Treasury Employees*, 24 Op. O.L.C. at 287.

The opinion noted, however, that "[i]f the salary of the Treasury employees in question had been set *exactly* at the amount paid for level I, subsection (d) by its terms would seem to apply." *Id*. In other words, we determined that if a statute permitted an employee's pay to fall within a range and, within that range, to equal or exceed level I, the agency's decision to set the employee's pay exactly at level I would make the employee "very senior," whatever the nature of the employee's position, authority, and stature. We recognized that such a result, in the context of these IRS and OTS employees, was "truly anomalous." *Id*. But we explained that, "in view of the present opinion," it would seem that "any future decision to set a salary exactly at the rate for level I will presumably reflect at least an administrative determination that the more stringent post-employment restrictions should apply." *Id*.

Our analysis in the *Treasury Employees* opinion implicitly assumed that "rate of pay" in section 207(d)(1)(B) refers to the employee's annual salary. *See, e.g.*, *id*. at 285 ("We understand that there are some Treasury employees . . . whose salaries exceed the rate of pay for level I.").[4] But the opinion did not explicitly consider what constitutes an employee's "rate of pay" for purposes of the comparison to level I.

### C.

You have advised us that HHS has several pay systems under which it sets the base pay for certain employees within a flexible range. HHS Opinion Request at 1. You provided the example of the pay system for members of the Silvio O. Conte Senior Biomedical Research Service

---

[4] We did note that some of the IRS employees in question were potentially eligible to receive "critical pay" under 5 U.S.C. § 9502(a) (Supp. IV 1998). *See Treasury Employees*, 24 Op. O.L.C. at 285. That provision, however, enabled the Office of Management and Budget (as of 2000) to "fix the rate of basic pay" for those positions up to a certain amount. 5 U.S.C. § 9502(a) (Supp. IV 1998).

("SBRS"), which consists of "individuals outstanding in the field of biomedical research or clinical research evaluation." 42 U.S.C. § 237(b) (2012).[5] The Secretary of Health and Human Services has the authority to determine SBRS members' "pay," which, up until December 13, 2016, could be no less than "the minimum rate payable for GS-15 of the General Schedule" and no more than "the rate payable for level I of the Executive Schedule unless approved by the President." *Id.* § 237(d)(2). While the pay for SBRS members was therefore, for a time, capped by default at level I, your office has informed us that there are pay systems for other kinds of HHS employees that "contain no express limit" and "therefore permit total individual pay to exceed level I." HHS Opinion Request at 2. We also understand that HHS employees under all of these pay systems may receive "various bonuses, awards, and allowances," although they do not receive locality-based comparability payments. *Id.*[6]

Because some HHS employees paid under these flexible pay systems may therefore receive a base salary of exactly the level I amount (cur-

---

[5] After HHS's request for an opinion, Congress amended the SBRS provision, 42 U.S.C. § 237. *See* 21st Century Cures Act, Pub. L. No. 114-255, § 3071, 130 Stat. 1033 (2016). Among other changes, Congress renamed the entity (it is now the "Silvio O. Conte Senior Biomedical Research and Biomedical Product Assessment Service"), and specified that it is now composed of "individuals outstanding in the field of biomedical research, clinical research evaluation, or biomedical product assessment." *Id.* § 3071(a). More relevant to the present inquiry, Congress also changed the applicable pay cap for members: instead of being set at "the rate payable for level I of the Executive Schedule" (absent presidential approval), it is now set at "the amount of annual compensation (excluding expenses) specified in section 102 of title 3," which is the President's yearly salary of $400,000. *Id.* For two reasons, however, this recent development does not obviate HHS's question. First, the new pay cap still allows the members' pay to match or exceed the amount payable for level I of the Executive Schedule (currently, $207,800). Second, our advice regarding the application of section 207(d)(1)(B) would still apply to SBRS members paid under the old version of 42 U.S.C. § 237. For ease of reference, this opinion will continue to refer to the "SBRS" and the pay system in place before December 13, 2016 (the date of enactment of the 21st Century Cures Act).

[6] We understand that HHS interprets "pay" in 42 U.S.C. § 237(d)(2) to refer to a member's base salary in addition to any applicable bonuses or allowances, so that, under the old SBRS pay system, the combination of all those forms of compensation could not exceed the level I threshold (absent presidential approval). HHS Opinion Request at 2; E-mail from Gretchen H. Weaver, Senior Ethics Counsel, Dep't of Health and Human Services, *Re: Question related to section 207(d) opinion* (Nov. 21, 2016 1:26 PM).

rently, $207,800[7]), and some other HHS employees—in particular, some SBRS members—may receive a base salary below that amount but also receive bonuses and allowances that bring them exactly to level I, your office has asked us to clarify the scope of section 207(d)(1)(B). *Id.* at 2–3. Other interested agencies have explained that they too have pay systems under which an employee's basic rate of pay, or the employee's basic rate of pay in combination with other bonuses, allowances, or forms of compensation, may equal or exceed the level I amount. *See* VA Views at 2–4; Treasury E-mail.

## II.

We first consider the more general question, namely, whether section 207(d)(1)(B) applies to any employee whose "rate of pay" is set by law or administrative action at the level I amount, or only to employees whose rate of pay is set at level I by law. Although the particulars of their positions differ, OGE, VA, and Treasury all maintain that section 207(d)(1)(B) should be read to apply only to an employee occupying a position for which the rate of pay is legally required to be set at level I, rather than to any employee whose rate of pay equals the level I rate. OGE Views at 1; VA Views at 1; Treasury E-mail.

As noted above, section 207(d) applies to, among others, "any person who . . . is employed in a position in the executive branch of the United States (including any independent agency) at a rate of pay payable for level I of the Executive Schedule." 18 U.S.C. § 207(d)(1)(B). Under the most straightforward and natural reading of that provision, it applies to any employee who (1) occupies a position in the Executive Branch, and (2) receives in that position a rate of pay equivalent to the "rate of pay payable for level I." *See Treasury Employees*, 24 Op. O.L.C. at 286. Section 207(d) would therefore apply to any Executive Branch employee whose rate of pay currently equals $207,800—whether by virtue of a statute setting the pay for the employee's position at level I, or by virtue of the employee's pay having been set at that amount pursuant to a statute allowing for pay within a range that encompasses the level I amount. In

---

[7] Salary Table No. 2017-EX, *Rates of Basic Pay for the Executive Schedule (EX) Effective January 2017*, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/pdf/2017/EX.pdf.

either case, the portion of the employee's annual salary in each paycheck would be the amount "payable for level I" in the pay period.

In advancing an interpretation under which the provision would apply only to employees whose rate of pay is set at level I by law, the agencies suggest that section 207(d)(1)(B)'s focus is on the pay designated for the *position*, rather than the pay received by the *employee* in that position. They suggest that the statutory phrase "at a rate of pay payable" ought to be read to modify "position" rather than "employed," so that section 207(d) would apply only to those occupying a "position . . . at a rate of pay payable for level I." According to the argument, when (for example) HHS sets the pay for an SBRS member pursuant to the agency's administrative discretion under 42 U.S.C. § 237(d), HHS is not setting the pay for the *position* of SBRS member. Instead, HHS is setting the pay for a particular individual. It therefore cannot be said (in the agencies' view) that the rate of pay payable for the "position" of SBRS member is the rate of pay for level I, and section 207(d) would not apply to any SBRS member, no matter what the employee's actual pay.

As an initial matter, even if the phrase "at a rate of pay payable for level I" could be fairly construed to modify "position" rather than "employed," it is not evident that that reading would produce the result the agencies propose. The agencies' argument assumes that an agency's setting a salary for a particular position within a statutory range does not constitute setting the pay for a "position," but rather involves setting the pay for an individual employee. But it is not at all clear that this is true. Agencies do not employ individuals in a vacuum, but instead employ them in particular positions that have prescribed duties, authorities, and compensation (even if the possible compensation covers a range). That the pay for a position may vary with the characteristics of the individual who occupies it does not necessarily mean that the agency is not setting the pay for the "position."

In any case, we do not think the agencies' proposed construction is consistent with the statute's text. When the statute uses the term "position" to define a provision's coverage, it consistently refers to a position "for which" the pay is a certain rate or "for which" a specified condition obtains. *See* 18 U.S.C. § 207(c)(2)(A)(ii) ("a person . . . employed in *a position . . . for which* that person is paid at a rate of basic pay which is equal to or greater than 86.5 percent of the rate of basic pay for level II of the Executive Schedule" (emphasis added)); *id.* ("a person . . . employed

in *a position . . . for which* the rate of basic pay . . . was equal to or greater than the rate of basic pay payable for level 5 of the Senior Executive Service" (emphasis added)); *id*. § 207(e)(7)(B) ("a former employee who . . . was employed in *a position for which* the rate of basic pay . . . is equal to or greater than the basic rate of pay payable for level IV of the Executive Schedule" (emphasis added)); *see also id*. § 207(c)(2)(A)(iv) ("a person . . . employed in a position which is held by an active duty commissioned officer of the uniformed services who is serving in *a grade or rank for which* the pay grade . . . is pay grade O–7 or above" (emphasis added)). By contrast, when the statute refers to the rate of pay at which a person is "employed" or "paid," it uses the preposition "at." *See id*. § 207(c)(2)(A)(i) ("a person . . . *employed at* a rate of pay specified in or fixed according to subchapter II of chapter 53 of title 5" (emphasis added)); *id*. § 207(c)(2)(A)(ii) ("a person . . . employed in a position . . . for which that person is *paid at* a rate of basic pay which is equal to or greater than 86.5 percent of the rate of basic pay for level II of the Executive Schedule" (emphasis added)). We believe that the two instances of the "employed . . . at a rate of pay payable" phrasing in 207(d)(1)(B) should be understood in the same way as in these other provisions. It should make no difference that additional words separate the prepositional phrase from the word it modifies.[8]

One of the agencies also suggests that our interpretation renders the statutory phrase "in a position" superfluous, because any person who "is employed in the executive branch . . . at a rate of pay payable for level I" would work just as well. *See* Treasury E-mail. But the canon against superfluity is not absolute, *see Lockhart v. United States*, 136 S. Ct. 958, 966 (2016), and in any event, under our interpretation the phrase "in a position" serves a function within the structure of section 207(d) as a whole: the five instances of the phrase in subsections (d)(1)(A), (B), and (C) facilitate the hanging paragraph at the end of subsection (d)(1) and

---

[8] Even if we disregarded the phrasing conventions used elsewhere in section 207, "at" would be an awkward word to use to convey the agencies' preferred meaning. If the statute were meant to apply only to positions for which the pay is set by law at the level I amount, it would have been more natural to refer to a "position *with* a rate of pay payable for level I" rather than a "position *at* a rate of pay payable for level I." Treasury E-mail (acknowledging that "with" would be the more natural word to use); *see also Webster's Third New International Dictionary* 2626 (2002) (defining "with" as "characterized or distinguished by").

also facilitate subsection (d)(2). The hanging paragraph at the end of subsection (d)(1) explains that the two-year bar starts at the time that the person's service "in that position" ends—not at the conclusion of the person's government service, unless the two coincide.[9] And the use of the phrase "in a position" permits subsection (d)(2) to use a shorthand reference to "a position described in subparagraph (A), (B), or (C) of paragraph (1)" to bring in all of the various parts of (d)(1).

The revision history of section 207(d) likewise fails to suggest that "at a rate of pay" should be read to modify "in a position" rather than "employed." As first adopted in the Ethics Reform Act of 1989, section 207(d)(1)(B) encompassed any person "employed in a position paid at a rate of pay payable for level I of the Executive Schedule." Pub. L. No. 101-194, § 101, 103 Stat. 1716, 1718. A year later, in an act making technical amendments to the Ethics Reform Act of 1989, Congress struck out the word "paid" and replaced it with "in the executive branch of the United States (including any independent agency)," which is how it appears today. *See* Pub. L. No. 101-280, § 2(a)(6)(A), 104 Stat. 149, 150 (1990). OGE argues that "[t]he original focus of the statute appears to

---

[9] *See* 5 C.F.R. § 2641.205(c). We recognize that the application of section 207(d)(1)(B) to employees who happen to receive level I pay at a point in time, but whose pay may be set within a range that exceeds level I, can lead to an odd result if the employee receives a pay increase that puts him over the level I amount. At that point, the employee would cease being a "very senior" employee (or, put differently, would have left his "very senior" position), and the two-year bar would begin even while the employee remained in the government with the same title. While this situation (if it arose) would be anomalous, it is not in our view so absurd or unworkable as to require abandoning the straightforward reading of section 207(d)(1)(B) discussed above. OGE regulations interpreting section 207(c) and 207(d) recognize that the statute allows for the possibility of former "senior" or "very senior" employees serving out their respective one- or two-year bars while still employed by the government. *See* 5 C.F.R. §§ 2641.104, 2641.204(d) & ex. 1, 2641.205(c). The statute exempts communications or appearances made on behalf of the United States, *see* 18 U.S.C. § 207(c)(1), (d)(1), so those employees would not violate the statute by acting within the scope of their employment. And other prohibitions in section 207 would still apply to those employees once they leave the government, even if the bars imposed by 207(c) or 207(d) had run. It is true that, in the example we have hypothesized, the former "very senior" employee could remain in the very same position and have the same job description, title, and stature as at the time that he happened to receive a level I salary. However, given the clear wording of section 207(d)(1)(B), it seems that this is simply an anomalous result that comes about because of the statute's reliance on salaries set exactly at level I.

have been . . . on the pay of the employee," and maintains that "Congress's decision to amend the law suggests an attempt to shift the focus to the pay of the employee's *position*." OGE Views at 4–5. Given that both versions of the statute refer to a "position," we do not believe that the change in language reflects the change in focus OGE suggests. In any event, the scant legislative history of the 1990 technical amendments indicates that this change was meant simply to clarify the application of 207(d) to independent agencies. *See* 136 Cong. Rec. H1646 (daily ed. Apr. 24, 1990) (detailed explanation of bill prepared by House and Senate legislative counsel) ("The amendment clarifies coverage of independent agency employees under the post-employment restrictions of section 207[.]"); *id.* at H1645–46 (statement of Rep. Fazio) ("The technical amendments also clarify coverage of Government officers and employees under the post-employment restrictions and make other technical and conforming amendments to the conflict-of-interest laws in title 18 of the United States Code.").

We therefore do not believe it is viable to read the statutory phrase "at a rate of pay payable for level I" to modify "position" rather than "employed," nor do we agree that, even under such a reading, section 207(d)(1)(B) would apply only to positions with salaries fixed at level I by law.

We have also considered whether our construction of the statute, under which the provision covers Executive Branch employees "employed . . . at a rate of pay payable" for level I, might nonetheless carry the agencies' preferred meaning—that is, whether the provision could be read to require that the person be "employed [*by statutory direction*] . . . at" the level I rate. Under that reading, if a person were employed pursuant to a statute that prescribes a pay range, he would not be "employed [*by statutory direction*]" at a rate of pay payable for level I. It would follow that the relevant portion of section (d)(1)(B) would apply only to Executive Branch employees for whom a statute sets the pay exactly at level I. This argument would read into the provision a qualification that lacks a clear textual basis, but because the statutory language, read literally, can lead to anomalous and even puzzling results, *see supra* note 9; *infra* pp. 14–15, we sought to consider every plausible argument that would avoid such outcomes.

We believe, however, that this alternate reading cannot be sustained, either. Even if we were prepared to read an extra-textual "by statutory

direction" qualification into section 207(d)(1)(B), we would presumably have to do so in section 207(c) as well. Subsection (c)(2)(A)(ii) covers any person "employed in a position . . . for which that person is paid at a rate of basic pay which is equal to or greater than 86.5 percent of the rate of basic pay for level II of the Executive Schedule" along with (for a time) any person who "was employed in a position . . . for which the rate of basic pay . . . was equal to or greater than the rate of basic pay payable for level 5 of the Senior Executive Service on the day prior to the enactment of [the National Defense Authorization Act for Fiscal Year 2004 ("2004 NDAA")]." That part of 207(c) is understood to cover, among others, members of the Senior Executive Service ("SES") who meet the pay thresholds. But the SES pay statute does not set SES members' pay at specific amounts on a position-by-position basis; instead, it prescribes a pay range. *See* 5 U.S.C. § 5382 (2012); *see also* 5 U.S.C. § 5382 (2000). Therefore, if we thought that sections 207(c) and 207(d) implicitly covered only employees for whom a statute requires pay at a discrete, specified amount—for instance, if we read section 207(c)(2)(A)(ii) to apply only to persons "paid [by statutory direction] at a rate of basic pay which is equal to or greater than 86.5 percent of the rate" for level II—then that provision would no longer cover SES employees. That result would be contrary to the settled understanding of section 207(c)(2)(A)(ii)'s application, both before and after the 2004 NDAA amendment to that provision.[10] *See, e.g.*, Office of Government Ethics, *One-Year Ban in 18 U.S.C. § 207(c)*, Informal Advisory Letter 93x10 (Apr. 21, 1993) (subsection (c)(2)(A)(ii), as then written, "identifies a class of individuals also subject to the restrictions of section 207(c) who hold positions other than those specified in the Executive Schedule, such as certain SES employees"); Office of Government Ethics, *Component Designations*, Informal Advisory Letter 07x10 (July 31, 2007) ("[S]ection 207(c)(2)(A)(ii) . . . generally governs whether an individual paid under the SES system is covered by section 207(c)."); H.R. Rep. No. 108-354, at 762 (Nov. 7, 2003) (conference report for 2004 NDAA) (describing the amended 207(c)(2)(A)(ii) as containing "post employment restrictions" relevant to the SES); *cf.* 5 C.F.R. § 2641.104, ex. 2 to the definition of senior em-

---

[10] *See* Pub. L. No. 108-136, tit. XI, § 1125(b)(1), 117 Stat. 1392, 1639 (2003).

ployee (stating that subsection (c)(2)(A)(ii) applies to individuals paid under 5 U.S.C. § 5376, which also prescribes a pay range).[11]

The agencies also support their narrower reading of section 207(d)(1)(B) by relying on the statutory purpose. HHS points out that salary alone is not a very exact proxy for an employee's level of authority or ability to exercise influence after leaving a position. To illustrate, HHS explains that the pay of individual SBRS members, who are "employed in the conduct of biomedical research, not policy-making," is set "without regard to an individual's relative seniority or ability to influence policy," but instead "based on consideration of the individual's specific skills, impact and recognition in the scientific community, and the private sector salaries commanded by individuals with similar skills." HHS Opinion Request at 2. Similarly, the VA states that, under our interpretation, a significant number of VA certified registered nurse anesthetists ("CRNAs"), whose basic pay is capped by regulation at level I and who currently receive that amount, would be considered "very senior." VA Views at 2–3. The VA argues against an interpretation of section 207(d) under which a CRNA, who "provides health-care services in a local VA Medical Center," is subject to the same post-employment restrictions as the Secretary of Veterans Affairs, when those stringent restrictions "do not apply to the Deputy Secretary, Under and Assistant Secretaries, and other high-level employees whose duties actually involve policy making and whose Department-wide connections could be used during post-employment in ways that raise an appearance of impropriety." *Id*. at 3. Rather than relying on the dollar amount of an employee's pay to determine whether he is "very senior," the agencies suggest that we should use the authority establishing the position as a signaling device: if the pay for the position is legally required to be set at level I, that requirement likely "reflect[s] a deliberate decision that the person occupying the position has a commensurate level of responsibility and influence as a person specified in level I of the Executive Schedule." OGE Views at 5.

---

[11] To get around this problem with section 207(c)(2)(A)(ii) and SES members, an advocate of this hypothetical reading could argue that section 207 means "employed [by statutory direction]" when it uses the word "employed," but does not mean "paid [by statutory direction]" when it uses the word "paid." But that distinction seems contrived. Both "employed" and "paid" refer to an action that could be said to have been directed by statute, and we do not see why one word would carry that implicit qualifier and not the other.

We recognize that our interpretation can lead to counterintuitive outcomes. We justified the result in our *Treasury Employees* opinion—i.e., the conclusion that employees who receive pay exceeding level I are not subject to 207(d)—by explaining that the IRS and OTS employees in question, despite their high salaries, were not the equivalent of agency heads and did not occupy the kinds of positions that "create the potential to exercise unusual continuing influence" over other level I officials once they left the government. *Treasury Employees*, 24 Op. O.L.C. at 286–87 (internal quotation marks and citation omitted). In offering that justification, we implicitly acknowledged that salary alone is an imperfect proxy for an employee's authority or stature within his agency or the federal government as a whole.

But salary is the proxy that Congress chose in section 207(d)(1)(B). And even if use of that proxy can lead to "truly anomalous" results, those results "follow[] from the precise language chosen by Congress." *Id*. at 287. Congress could have limited section 207(d)(1)(B)'s application to only those employees listed in 5 U.S.C. § 5312, or only those who are "employed at a rate of pay specified in or fixed according to" that provision—both formulations that appear elsewhere in section 207, *see* 18 U.S.C. § 207(d)(2)(B), (c)(2)(A)(i)—or else those who meet a more qualitative definition based on seniority or decision-making authority.[12] Instead, Congress defined the class of employees solely according to a salary amount, sweeping in anyone who is "employed" "at a rate of pay payable for level I," whether or not that high salary reflects the employee's hierarchical status or other considerations. We continue to believe that the best interpretation of section 207(d)(1)(B) is one that gives effect to that choice of phrasing. And the premise on which the agencies' arguments about purpose are based—that by *requiring* a position's pay to be set at level I a statute reflects a "deliberate decision" that the employee is very senior, whereas merely *allowing* the pay to be set at level I does not reflect such a determination—is not in our view obviously correct. In any event, the premise finds no support in the text or legislative history

---

[12] Congress took that approach in the predecessor to section 207(c)(2), which extended the then-applicable prohibition in 207(c) to, among others, "a person employed . . . in a position which involves significant decision-making or supervisory responsibility, as designated under this subparagraph by the Director of the Office of Government Ethics, in consultation with the department or agency concerned." 18 U.S.C. § 207(d)(1)(C) (1982).

of the statute. Accordingly, it cannot in our view justify a departure from the statute's plain language.

We also continue to believe that the anomalous results potentially generated by the most straightforward reading of section 207(d) can be readily avoided. If a statute authorizes the pay for a particular position to fall within a range encompassing level I, and if the employing agency believes that the position does not carry the kind of responsibility, authority, or influence that necessitates the stringent post-employment restrictions of section 207(d), the agency can exercise its discretion to set the employee's rate of pay at an amount other than level I. *Cf. Applicability of the Post-Employment Restrictions of 18 U.S.C. § 207(c) to Assignees Under the Intergovernmental Personnel Act*, 24 Op. O.L.C. 94, 98 (2000) ("*Intergovernmental Personnel Act*"). If, for example, HHS believes that SBRS members do not occupy positions with significant policy-making authority and there is not likely to be an appearance of impropriety if they communicate with former HHS employees or other agency heads on behalf of outside parties during the two years after their tenure ends, HHS can elect to set the SBRS members' salaries below the level I amount (or above). "[I]n view of the present opinion," however, "any future decision to set a salary exactly at the rate for level I will presumably reflect at least an administrative determination that the more stringent post-employment restrictions should apply." *Treasury Employees*, 24 Op. O.L.C. at 287. Congress thus left this choice to the agencies that it enabled to set pay at the same rate as level I or at a lesser or greater rate.

Accordingly, in view of our *Treasury Employees* opinion and the present opinion, agencies (and in particular their ethics officials) should be on notice regarding the ramifications of a decision to set an employee's rate of pay exactly at level I. Furthermore, in light of the conclusion we reach in Part III of this opinion, an agency or employee need only compare the employee's basic rate of pay to the rate of pay for level I to determine whether he will be subject to the two-year bar. Indeed, OGE suggests that this class of employees "would be relatively identifiable," allowing agencies to "proactively take steps to mitigate overbreadth issues through training and guidance." OGE Views at 7.

We therefore adhere to the view, expressed in our earlier opinion, that section 207(d)(1)(B) encompasses any Executive Branch employee whose "rate of pay" equals the level I amount, whether that rate is set by law or administrative action.

## III.

While the *Treasury Employees* opinion did not address what constitutes an employee's "rate of pay" for purposes of section 207(d)(1)(B)'s comparison, the opinion did observe that "[i]f *the salary* of the Treasury employees in question had been set *exactly* at the rate for level I, subsection (d) by its terms would seem to apply." *Treasury Employees*, 24 Op. O.L.C. at 287 (first emphasis added). We similarly explained that "any future decision *to set a salary* exactly at the rate for level I will presumably reflect at least an administrative determination that the more stringent post-employment restrictions should apply." *Id*. (emphasis added). Our analysis thus appears to have assumed that "rate of pay" refers solely to the employee's annual salary. *See id*. at 285 ("We understand that there are some Treasury employees . . . whose salaries exceed the rate of pay for level I."); *id*. at 286 ("Section 207 uses a former official's salary as a proxy for ability to exercise influence, so that higher salaries in general lead to greater post-employment restrictions."); *Webster's Third New International Dictionary* 2003 (2002) (defining "salary" as "fixed compensation paid regularly (as by the year, quarter, month, or week) for services").[13]

Now that the question has been squarely posed to us, we affirm that implicit understanding: the phrase "rate of pay" in 207(d)(1)(B) refers solely to an employee's basic rate of pay (i.e., base salary), and does not include any forms of additional pay.[14] Three considerations lead to this view.

---

[13] *See supra* note 4.

[14] HHS did not specifically ask us to determine whether "rate of pay" in section 207(d)(1)(B) includes locality-based comparability payments, as the HHS employees in question do not receive such payments. *See* HHS Opinion Request at 2. Similarly, Treasury and the VA did not specifically mention whether they have any employees whose total pay might equal or exceed the level I amount because of their receiving locality pay (though the VA noted that locality considerations are taken into account in setting the basic rate of pay for VA CRNAs, *see* VA Views at 3). Although we do not know whether such employees exist, it follows from our conclusion here—that a "rate of pay" refers to a rate of basic pay—that locality-based comparability payments, to the extent they constitute a form of compensation separate and apart from the employee's basic pay, would be excluded. *Cf*. 5 U.S.C. § 5304(c)(2)(A); *Calculating Rate of Pay of Department of Justice Employees for Purposes of "Covered Persons" Determination Under Independent Counsel Act*, 21 Op. O.L.C. 68 (1997) ("*Independent Counsel Act*").

First, if "rate of pay" refers only to the employee's rate of basic pay, section 207(d)(1)(B) calls for an apples-to-apples comparison. The provision asks whether the "rate of pay" of the Executive Branch employee is equal to the "rate of pay payable for level I of the Executive Schedule." The "rate of pay . . . for level I of the Executive Schedule" is a rate of basic pay; the Executive Schedule sets forth base annual salaries for each of its five levels. *See* 5 U.S.C. § 5311 (defining the Executive Schedule as "the basic pay schedule" for the positions to which it applies); *accord id*. §§ 5312–5316. It would therefore make sense that the figure section 207(d)(1)(B) is comparing against the rate for level I—the employee's "rate of pay"—would also be a base-salary figure.

Second, that interpretation adheres to the natural reading of the phrase "employed at . . . a rate of pay." Although the meaning of the term "rate" can vary depending on context, it often denotes a set amount fixed according to some standard. *See Webster's Third New International Dictionary* 1884 (2002) (defining "rate" as "a charge, payment, or price fixed according to a ratio, scale, or standard"); 13 *Oxford English Dictionary* 208–09 (2d ed. 1989) (defining "rate" as "[t]he amount of a charge or payment (such as interest, discount, wages, etc.) having relation to some other amount or basis of calculation" and "[a] fixed charge applicable to each individual case or instance; *esp*. the (*or* an) amount paid or demanded for a certain quantity of a commodity, material, work, etc."); *Black's Law Dictionary* 1375 (9th ed. 2009) (defining "rate" as "[p]roportional or relative value" and "[a]n amount paid or charged for a good or service"). The word does not readily encompass one-off payments made at irregular intervals such as bonuses and awards. Moreover, section 207(d) refers to the "rate" that the employee is "*employed . . . at*," and that phrase suggests the compensation for the employee's continuing and regular services and not any additional forms of compensation the employee may receive from time to time.[15]

---

[15] Locality-based comparability payments, although they supplement an employee's basic rate of pay, are distributed concurrent with the employee's basic pay and thus comprise a portion of an employee's regular paycheck. *See* 5 U.S.C. § 5304(c)(2)(B). Thus, locality payments could reasonably be understood to be part of the "rate" the employee is employed at under the dictionary definitions set forth above. As discussed just below and in our *Independent Counsel Act* opinion, however, there is good reason to conclude that Congress did not intend an employee's coverage to depend on the geographic location where he happens to serve.

Third, the language in this instance readily lends itself to an interpretation that accommodates the statutory purposes. As discussed above, section 207 generally uses pay as a proxy for the importance of the employee's duties and hierarchical position and thus as a measure of post-employment influence. *See Intergovernmental Personnel Act*, 24 Op. O.L.C. at 96–97. Given the statute's use of that proxy, it seems unlikely that Congress intended for an employee's receipt of discrete payments, or supplemental payments that turn solely on a factor like the employee's geographic location, to determine whether the employee would be subject to 207(d). If an agency awarded a bonus because of circumstances unique to the employee's performance in a particular year, the award would not be closely tied to the nature of the position itself or the employee's continuing status in the agency. Similarly, allowances (such as a relocation allowance) are not necessarily based on a position's or an employee's duties but rather on practical considerations of attracting or retaining personnel.

Our Office came to a similar conclusion regarding the phrase "rate of pay" in an opinion about the class of "covered persons" subject to investigation by an Independent Counsel. *See Calculating Rate of Pay of Department of Justice Employees for Purposes of "Covered Persons" Determination Under Independent Counsel Act*, 21 Op. O.L.C. 68 (1997) ("*Independent Counsel Act*"). The covered class included, among others, "any individual working in the Department of Justice who is compensated at a rate of pay at or above level III of the Executive Schedule." 28 U.S.C. § 591(b)(4). We found that the statute's reference to "rate of pay" did not include locality-based comparability payments under 5 U.S.C. § 5304. We explained that, because locality pay is aimed simply at achieving pay parity between federal employees and their non-federal counterparts on a locality-by-locality basis, it would make little sense to interpret the Independent Counsel Act so that its application might depend on whether the employee receives such pay: "Persons otherwise not covered by the Act would become 'covered persons' as a result of the location where they work, rather than the position they occupy. Such a result would not only fail to serve the purposes of the Act, but would actually be contrary to them as well." *Independent Counsel Act*, 21 Op. O.L.C. at 69. We find

that logic persuasive again here, with respect not only to locality pay but to other forms of additional pay.[16]

To be sure, an employee's basic rate of pay—especially when an agency has discretion to set the rate for an employee's position within a flexible range—may, to some extent, reflect circumstances tailored to the employee rather than to the position more generally, and those individual factors might not correspond to the likely extent of the employee's influence after leaving the government. As noted above, we understand that the rate of pay for SBRS members is set on an individual basis and in consideration of the researcher's specific skills, standing in the scientific community, and salaries that similar individuals receive in the private sector. HHS Opinion Request at 2. Likewise, the VA represents that the pay for VA CRNAs is determined in a way that renders it "impossible" to extract a locality component from the basic rate of pay, because that rate is determined by salary surveys conducted by each VA medical center that take into account local market conditions for registered nurses. VA Views at 3. These factors reinforce the point, acknowledged above, that the use of the employee's base salary as a measure of his stature or influence is "necessarily inexact." *Independent Counsel Act*, 21 Op. O.L.C. at 71. Nonetheless, and as we reasoned in the *Independent Counsel Act* opinion, the inclusion of bonuses, allowances, and locality pay in the rate-of-pay calculation "would greatly magnify the imprecision" that is unavoidable with the salary proxy. *Id*. We therefore believe that additional pay should be disregarded unless the statute's text clearly indicates otherwise.

The strongest argument against this reading of "rate of pay" arises from a comparison of section 207(d)(1)(B) to two other subsections of section

---

[16] OGE has concluded that General Schedule step increases (within-grade pay increases) and cost-of-living adjustments should be included in determining whether an employee is subject to 18 U.S.C. § 207(c). *See* Office of Government Ethics, *Definition of "Senior Employee" and "Very Senior Employee"*, Informal Advisory Letter 92x20 (July 23, 1992). OGE reached that conclusion because those pay adjustments "lead to a new rate of basic pay," unlike "bonuses, awards, and various allowances," which OGE found should not factor into the section 207(c) determination. *Id*.; *see also* Office of Government Ethics, *Senior Employees; Post-Government Employment Restrictions; Public Financial Disclosure Requirement*, Informal Advisory Letter 98x2, at 2 n.3 (Feb. 11, 1998). OGE's position in this regard is consistent with our analysis regarding "rate of pay" in section 207(d)(1)(B), and we note that if a pay adjustment results in an increase or decrease in the employee's rate of basic pay, so defined, the amount of the adjustment should not be excluded for purposes of the "very senior" determination.

207 that specifically refer to "rate[s] of basic pay" or "basic rate[s] of pay." That Congress included that qualifier in some instances but not others would ordinarily counsel against reading the word "basic" into section 207(d)(1)(B). But because one of those subsections, through a cross-reference, also uses the unadorned phrase "rate of pay" to refer to a *basic* rate of pay, we believe that the statute's use of the word "basic" in some instances but not others is not itself determinative.

The first subsection is section 207(c), which defines the category of "senior" employees to include, among others, persons:

> (i) employed at a rate of pay specified in or fixed according to subchapter II of chapter 53 of title 5,
>
> [and]
>
> (ii) employed in a position which is not referred to in clause (i) and for which that person is paid at a *rate of basic pay* which is equal to or greater than 86.5 percent of the *rate of basic pay* for level II of the Executive Schedule, or, for a period of 2 years following the enactment of the National Defense Authorization Act for Fiscal Year 2004, a person who, on the day prior to the enactment of that Act, was employed in a position which is not referred to in clause (i) and for which the *rate of basic pay, exclusive of any locality-based pay adjustment under section 5304 or section 5304a of title 5*, was equal to or greater than the *rate of basic pay* payable for level 5 of the Senior Executive Service on the day prior to the enactment of that Act . . . .

18 U.S.C. § 207(c)(2)(A) (emphases added). The second is section 207(e), the provision applicable to former members of Congress and employees of the legislative branch. Section 207(e)(7) qualifies the category of employees subject to that subsection's post-employment restrictions:

> (A) The restrictions contained in paragraphs (2), (3), (4), and (5) [of section 207(e)] apply only to acts by a former employee who . . . was paid a *rate of basic pay* equal to or greater than an amount which is 75 percent of the *basic rate of pay* payable for a Member of the House of Congress in which such employee was employed.
>
> (B) The restrictions contained in paragraph (6) [of section 207(e)] apply only to acts by a former employee who . . . was employed in a position for which the *rate of basic pay*, *exclusive of any locality-*

> based pay adjustment under section 5302 of title 5,[17] is equal to or greater than the *basic rate of pay* payable for level IV of the Executive Schedule.

*Id.* § 207(e)(7) (emphases added).

Section 207(c)(2)(A)(ii) and section 207(e)(7)(A) and (B) thus refer several times to a "rate of basic pay" or a "basic rate of pay." "That is significant because Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 919 (2015) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)). We might therefore infer that "rate of pay" in section 207(d)(1)(B) must mean something other than "rate of basic pay." Furthermore, the distinct phrases appear in the same statutory section, and Congress created the key distinction between them—the inclusion of the word "basic" in 207(c) and 207(e) and the qualifier's omission in 207(d)—in a single enactment, the Ethics Reform Act of 1989, *see* Pub. L. No. 101-194, § 101, 103 Stat. 1716, 1716–20.[18] And we have found such distinctions in section 207 significant in the past. Our *Treasury Employees* opinion placed weight on the "notably different" phrases in section 207(c)(2)(A)(ii), which at the time included employees whose rates of basic pay were "*equal to or greater than* the rate of basic pay payable for level 5 of the Senior Executive Service," and section 207(d)(1)(B), with its "*at* a rate of pay" phrasing. In light of this difference, we reached the conclusion that the "at a rate of pay" language applied only to officials with pay set exactly "at" level I. 24 Op. O.L.C. at 286. The difference in language, we said, reinforced the "unambiguous" phrase "at a rate of pay."

Here, however, subsection (c) itself uses the relevant phrases—"rate of pay" and "rate of basic pay"—to refer to the same thing. Accordingly, we do not think the distinction in phrasing indicates that the "rate of pay" in subsection (d)(1)(B) means something different from "rate of basic pay." *Cf.* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170–71 (2012) (noting that the presumption of consistent

---

[17] This appears to be an incorrect reference. Section 5304 of title 5 provides for locality-based comparability payments, not section 5302. *See* 18 U.S.C. § 207(c)(2)(A)(ii).

[18] We found no illuminating legislative history on the issue. As the *Treasury Employees* opinion noted, the history relating to section 207(d) is sparse. 24 Op. O.L.C. at 286 n.1.

usage, "more than most other canons, . . . assumes a perfection of drafting that, as an empirical matter, is not often achieved," and is "particularly defeasible by context"); *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 435–36 (2002) (disregarding the *Russello* presumption when context indicated otherwise). Section 207(c)(2)(A)(i) uses "rate of pay" to refer to rates "specified in" the Executive Schedule. The Executive Schedule is defined by statute as "*the basic pay schedule* for positions" to which it applies. 5 U.S.C. § 5311 (emphasis added).[19] It follows that "a rate of pay specified in . . . subchapter II of chapter 53 of title 5" necessarily refers to a basic rate of pay, even though the word "basic" is omitted. Because section 207 thus uses the two different phrases to mean the same thing in the same subsection, we think it is likewise reasonable to understand the two phrases to mean the same thing in different subsections—particularly where, as discussed earlier, there are compelling reasons to read "rate of pay" in 207(d)(1)(B) to mean rate of basic pay. *See supra* pp. 17–20. Sections 207(d)(1)(B) and 207(c)(2)(A)(i), moreover, are not out of the ordinary: many other statutes use "rate of pay" or "rate payable" to describe the rates of basic pay under the Executive Schedule. *See, e.g.*, 2 U.S.C. § 356(D); 5 U.S.C. § 5318; 7 U.S.C. § 7657(d)(2)(B); 22 U.S.C. § 3961(a); 50 U.S.C. § 3024(s)(3), (4); *id.* § 3610(c).[20]

Nor do we find it probative that, at times when section 207(c) and section 207(e) refer to "the rate of basic pay," the provisions state that such a rate is "exclusive of any locality-based pay adjustment" afforded by statute. *See* 18 U.S.C. § 207(c)(2)(A)(ii), (e)(7)(B). The statute's use of that qualifying phrase in some instances, but not all, could give rise to the inference that "rate of basic pay" should be read to include locality pay unless otherwise stated. Otherwise, the phrase "exclusive of any locality-based pay adjustment" would be superfluous. If that were the case, that reading of 207(c) and 207(e) could require the conclusion that "rate of pay" in section 207(d) *also* includes locality-based comparability pay-

---

[19] In addition, the provisions designating positions at each Executive Schedule level state that "the annual rate of basic pay" for each position shall be the rate set for that level. *See* 5 U.S.C. §§ 5312–5316.

[20] *See also* 5 U.S.C. § 5302(8) (explaining that for the purpose of that subchapter, "the term 'rates of pay under the General Schedule' [and] 'rates of pay for the General Schedule'" mean "the rates of basic pay under the General Schedule as established by section 5332, excluding pay under section 5304 and any other additional pay of any kind").

ments whenever applicable (and possibly other forms of additional pay). In our view, however, the initial inference that "rate of basic pay" includes locality pay unless otherwise stated would not be warranted. Such a reading comes into conflict with the general understanding that the phrase "rate of basic pay" (or "basic rate of pay") is a "term of art specifically meaning 'the rate of pay . . . before any deductions and exclusive of additional pay of any other kind, such as locality-based comparability payments.'" *Independent Counsel Act*, 21 Op. O.L.C. at 70 (quoting 5 C.F.R. § 534.401(b)(3) (1996)). That understanding derives from the statute establishing locality-based comparability payments, which states that such payments "shall be considered to be part of basic pay" for certain specified purposes and "for such other purposes as may be expressly provided for by law or as the Office of Personnel Management may by regulation prescribe." 5 U.S.C. § 5304(c)(2)(A). In fact, OGE relied upon 5 U.S.C. § 5304(c)(2)(A) to find that an employee's "rate of basic pay" for purposes of section 207(c)(2)(A)(ii) does *not* include locality pay, despite language specifically addressing locality pay elsewhere in that subsection. *See* Office of Government Ethics, *Elements of Basic Pay for Purposes of Senior Employee Determinations*, Informal Advisory Letter 07x15 (Dec. 13, 2007). We believe that the language in sections 207(c) and 207(e) making clear that the term "rate of basic pay" is exclusive of locality pay was merely intended to clarify what was already implicit in the term itself. *Cf. United States v. Atl. Research Corp.*, 551 U.S. 128, 137 (2007) ("[O]ur hesitancy to construe statutes to render language superfluous does not require us to avoid surplusage at all costs. It is appropriate to tolerate a degree of surplusage . . . .").

We therefore conclude that section 207(d)(1)(B) refers to the employee's rate of basic pay, exclusive of additional forms of payment such as bonuses, awards, allowances, and locality pay.[21]

## IV.

For these reasons, we interpret the statutory phrase "any person who . . . is employed in a position in the executive branch of the United States . . . at a rate of pay payable for level I of the Executive Schedule" to en-

---

[21] We understand that this interpretation accords with OGE practice since the issuance of our *Treasury Employees* opinion in 2000. *See* OGE Views at 2, 6.

compass any Executive Branch employee who receives a rate of basic pay of exactly the level I amount. Should any SBRS member or other HHS employee receive a base salary set at level I, that employee would be subject to section 207(d)'s post-employment restrictions, whether the employee's pay is set at level I by law or administrative action, and whether that employee also receives allowances, bonuses, or other additional pay putting his total pay above that level. Conversely, an employee would not be subject to section 207(d) if his base salary were set below level I but his receipt of additional pay brought his total pay to the level I threshold.

DANIEL L. KOFFSKY
*Deputy Assistant Attorney General*
*Office of Legal Counsel*